# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONELL FREEMAN, | |
| Plaintiff, | Civil Action No. 18-7802 (BRM) |
| v. | **OPINION** |
| KEVIN MCDONNELL, MD, | |
| Defendant. | |

Before this Court is *pro se* prisoner Donnell Freeman's ("Plaintiff") civil rights complaint, filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Based on his affidavit of indigence (ECF No. 1-1), Plaintiff is granted leave to proceed *in forma pauperis* and the Clerk of the Court shall file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes the Complaint should be dismissed without prejudice.

**I. BACKGROUND**[1]

On June 29, 2015, Plaintiff was taken to Monmouth County Correctional Facility following his release from Bayshore Hospital after a car crash. (Compl. (ECF No. 1) ¶ 6.) He sought medical attention from providers at the jail regarding left leg pain, for which he was given medication. (*Id.*)

---

[1] The factual allegations are taken from the Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

The condition worsened and, during an exam on December 2, 2015, an x-ray was taken of his left hip. (*Id.*) The doctor informed him it was a fracture healing from a previous operation where he had a screw put into his thigh. (*Id.*) He was given medication for the pain. (*Id.*) Eventually the pain became unbearable, to the point where his walk was affected. (*Id.*) He requested a referral to an orthopedist, but the doctors continued to deny him and would not refer him for additional medical care. (*Id.*) The doctors said they did not see a need for medical care and his problem was not severe. (*Id.*) Plaintiff continued to request help for two years. (*Id.*) In April 2017, Plaintiff was transferred to South Woods State Prison, and in December 2017, he received hip replacement surgery. (*Id.*) Plaintiff is seeking compensatory damages. (*Id.* ¶ 7.)

**II. LEGAL STANDARD**

**A. Standard for a *Sua Sponte* Dismissal**

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To

survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.[2] *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.

---

[2] Because it appears that Plaintiff was a pre-trial detainee at the time of the incidents, he would therefore be entitled to due process protections under the Fourteenth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Without deciding whether the Fourteenth Amendment provides greater protections, the Third Circuit has found it sufficient to apply the Eighth Amendment standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976) when evaluating a claim for inadequate medical care by a detainee. *Banda v. Adams*, No. 16-1582, 2017 WL 76943, at *2 (3d Cir. Jan. 9, 2017) (citing *Natale*, 318 F.3d at 581); *Edwards v. Northampton Cty.*, 663 F. App'x 132, 136 (3d Cir. 2016).

*Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, a plaintiff is more likely to succeed on a medical malpractice claim than an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met . . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted).

In his Complaint, Plaintiff names Kevin McDonnell, M.D., a Monmouth County medical provider, as the only defendant. Plaintiff alleges he was "grossly negligent in supervising subordinates who committed wrong acts while in their capacity under color of state law did violated [his] 8th and 14th Amend [sic]." (Compl. ¶ 6.) He further states he "created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such policy. The defendant was deliberate [sic] indifference [sic] and medical neglect [sic] resulting in complete hip replacement." (*Id.*)

5

At the outset, *respondeat superior* is not a basis for § 1983 liability. As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that § 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior"). Therefore, to the extent Plaintiff seeks to impose liability on McDonnell merely because his employees allegedly violated Plaintiff's constitutional rights, that claim would fail.

To the extent he is arguing McDonnell is liable as a policymaker, that claim would also fail. In *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015), the Third Circuit outlined "two general ways" in which a supervisor-defendant may be liable: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The Third Circuit explained these two general types of supervisory liability as follows:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims –failure to train, failure to discipline, or, as in the

case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

*Id.*

Here, Plaintiff's conclusory allegation that Defendant "created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such policy," is insufficient to state a supervisory claim against McDonnell. He provides no specifics regarding this "policy," or any other facts required to support such a claim. As such, Plaintiff's supervisory claim against McDonnell is **DISMISSED**.

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted. Because it is conceivable Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, Plaintiff may move to re-open this case and to file an amended complaint.[3] An appropriate Order will follow.

Dated: June 26, 2018

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

---

[3] Though McDonnell is the only defendant named in this Complaint, Plaintiff also states he asked "doctors" for referrals to orthopedic specialists, for a cane to help with walking, and for additional tests, but his requests were repeatedly denied. To the extent Plaintiff intends to raise claims against these individuals in any amended complaint, the Court notes Plaintiff should provide more specific facts to state a claim under *Iqbal*. Specifically, while deliberate indifference can be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury," *see McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted), it is unclear who was denying his requests for this treatment, or whether it was one medical provider or multiple providers. It is also unclear when these requests were made, how they were conveyed to the provider(s), how many times he sought medical attention, etc.