**POREDA LAW**
Michael Poreda, Esq. (025492010)
50 Division Street, Suite 501
Somerville, NJ 08876
Telephone: (908) 274-1270
Cell: (908) 432-4098
e-Mail: poreda@poredalaw.com.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONELL FREEMAN,<br><br>      *Plaintiff*,<br><br>vs.<br><br>KABEERUDDIN HASHMI, M.D., KEVIN MCDONNELL, M.D., DR. JOHN DOE, M.D., MONMOUTH COUNTY CORRECTIONAL INSTITUTION, DONALD SUTTON, JOHN DOES A-E, CORRECT CARE SOLUTIONS LLC d/b/a WELLPATH, SCOTT MILLER, M.D., ST. FRANCIS MEDICAL CENTER, ZIMMER BIOMET HOLDINGS, COUNTY OF MONMOUTH, DEPARTMENT OF CORRECTIONS, STATE OF NEW JERSEY, STATE OF NEW JERSEY,<br><br>      *Defendants*. | Docket No. 3:18-cv-7802<br><br>   <u>**Civil Action**</u><br><br>   **AMENDED COMPLAINT** |

To:

Kabeeruddin Hashmi, M.D.     Correct Care Solutions d/b/a Wellpath
1 Waterworks Road       1283 Murfreesboro Road
Freehold, NJ 07728        Nashville, TN 37217

1

Kevin McDonell, M.D.
1 Waterworks Road
Freehold, NJ 07728

Dr. John Doe, M.D.
1 Waterworks Road
Freehold, NJ 07728

Donald Sutton
1 Waterworks Road
Freehold, NJ 07728

John Does A-E
1 Waterworks Road
Freehold, NJ 07728

Scott Miller, M.D.
601 Hamilton Avenue
Trenton, NJ 08629

Monmouth County Correctional Institution
1 Waterworks Road
Freehold, NJ 07728

Zimmer Biomet Holdings
345 East Main Street
Warsaw, IN 46580

St. Francis Medical Center
601 Hamilton Avenue
Trenton, NJ 08629

County of Monmouth
c/o Tom Reardon
Reardon Anderson LLC
55 Gilbert Street North
Suite 2204
Tinton Falls NJ 07701

Department of Corrections -
State of New Jersey
c/o Gurbir Grewal
Attorney General
25 Market Street
8th Floor, West Wing
Trenton, NJ 08625

State of New Jersey
c/o Gurbir Grewal
Attorney General
25 Market Street
8th Floor, West Wing
Trenton, NJ 08625

---

## COMPLAINT FOR A CIVIL CASE

Plaintiff, Donell Freeman, by way of Complaint against Defendants, says as follows:

## JURISDICTION AND VENUE

1.)   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws and Constitution of the United States, namely whether Defendants violated Plaintiff's rights under the U.S. Constitution.

2.)   This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3.)   Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## THE PARTIES

4.)   Plaintiff Donell Freeman is an inmate at Northern State Prison, 168 Frontage Road, Newark, NJ 07114.

5.)   Defendant Monmouth County Correctional Institution ("MCCI") is prison facility located at 1 Waterworks Road, Freehold, NJ 07728.

6.)   Defendant Donald Sutton is the warden of MCCI.

7.)   John Does A-E are supervisors at MCCI.

8.)   Defendant Correct Care Solutions, LLC d/b/a Wellpath ("Wellpath") is a private company headquartered at 1283 Murfreesboro Road, Nashville, TN 37217.  Wellpath is in the business of providing medical services to prisoners.  On information and belief, Wellpath was a contractor of MCCI.

9.)   Defendant Kabeeruddin Hashmi, M.D. is an employee of Wellpath and/or MCCI.

10.)   Defendant Kevin McDonald, M.D. is an employee of Wellpath and/or MCCI.

11.)   Defendant Dr. John Doe, M.D. is an employee of Wellpath and/or MCCI.  Dr. John Doe, M.D. is a male who, on information and belief, is an immigrant from Africa.

12.)   St. Francis Medical Center ("St. Francis") is a hospital located at 601 Hamilton Avenue, Trenton, New Jersey.  On information and belief, St. Francis had a contract with the New Jersey Department of Corrections to provide medical care to prisoners incarcerated in state prisons.

13.)   Scott Miller, M.D. is an orthopedic surgeon employed by St. Francis Medical Center.

14.)   Zimmer Biomet is a manufacturer of hip replacement devices, headquartered at 345 East Main Street, Warsaw, IN 46580.

15.)   Defendant County of Monmouth is, on information and belief, the true party which must be sued when alleging illegal activity attributable to MCCI.

16.)   Defendant Department of Corrections, State of New Jersey, on information and belief, is the true party which must be sued when alleging illegal activity attributable to MCCI.

17.)   Defendant State of New Jersey, on information and belief, is the true party which must be sued when alleging illegal activity attributable to MCCI.

## FACTUAL BACKGROUND

18.)   Plaintiff is a male whose date of birth is December 25, 1975.

19.)   At about age 14, Plaintiff injured his hip.  A screw was surgically implanted in his hip in order to treat the injury.

20.)   In 2011, Plaintiff was serving a sentence at Northern State Prison.

21.)   On August 23, 2011, Plaintiff fell off the bunk in his cell during the earthquake that affected the Northeastern United States on that day.

22.)   When he struck the floor, Plaintiff felt something in his hip slip out of place, and he began to experience hip pain.

23.)   X-rays were taken at Northern State Prison in 2012 and 2013.

24.)   In 2015, Plaintiff was released from Northern State Prison.

25.)   Plaintiff experienced significant problems finding and keeping a job due to the mounting pain in his hip.

26.)   On June 29, 2015, Plaintiff, intoxicated on an unknown substance that was given to him by a friend, grabbed the cash register from a supermarket after a disagreement with the cashier arose about the amount of money on a debit card.  Plaintiff then exited the store with the cash register.

27.)   After taking the cash register, he got into a friend's car and drove away from the supermarket.

28.)   Plaintiff crashed the car.

29.)     After the car crash, he was arrested and taken to Bayshore Hospital for treatment because
          of injuries that included severe pain in his hip.

30.)     At Bayshore Hospital, x-rays of Plaintiff's hip were taken, and doctors ordered follow-up
          x-rays to be taken by the prison facility to which Plaintiff was transferred.

31.)     Plaintiff was transferred to MCCI.

32.)     At MCCI, Plaintiff was given Motrin, but not an x-ray.

33.)     Plaintiff was in severe and excruciating pain.

34.)     Plaintiff let medical staff know that the Motrin did nothing to help the pain.

35.)     His leg would jerk involuntarily.

36.)     He would wake up crying from the pain.

37.)     He experienced numbness in his leg.

38.)     Plaintiff would feel his hip "pop out of place."

39.)     The pain was so excruciating and unremitting that Plaintiff developed mental illness and
          was given psychiatric drugs.

40.)     Plaintiff experienced serious problems with mobility due to the pain.

41.)     Plaintiff's ability to go up and down stairs was extremely compromised, and the ordeal of
          the stairs was incredibly painful.

42.)     Plaintiff experienced difficulty showering due to the pain, and as a result, he could not
          appropriately shower.

43.)     After six months of excruciating pain, an x-ray was finally taken.

44.)     He was told that the pain he was experiencing was just the result of an old fracture that
          had healed.

45.)     Sure that there was a serious problem, Plaintiff requested follow-up diagnostics.

46.)     All requests were denied.

47.)   Plaintiff requested to be placed in a medical wing where there were toilets and showers for disabled inmates and no stairs.

48.)   This request was denied.

49.)   Plaintiff requested a wheelchair, cane, or permission to use the bottom bunk.  These requests for reasonable accommodation were all denied.

50.)   For two years, Plaintiff was disabled, living in agony, and yet the prison did nothing to accommodate the disability or attend to the pain.

51.)   In April 2017, Plaintiff was transferred to South Woods State Prison.

52.)   At South Woods, a nurse, upon observing Plaintiff attempt to walk, immediately ordered an x-ray.

53.)   The x-ray demonstrated that Plaintiff's hip was severely deformed, that the screw in his hip had come loose, and that he needed a complete hip replacement.

54.)   On December 12, 2017, Plaintiff underwent a total hip replacement at St. Francis Hospital.

55.)   During the surgery, surgeon Scott Miller, M.D. noted "significant adhesions" that had to be broken up with a Cobb elevator.

56.)   The surgeon struggled to remove the screw that was deeply embedded in soft tissue.

57.)   During surgery, Plaintiff was implanted with the Zimmer Biomet Taperloc device.

58.)   Biomet was a successful medical device company which was purchased by Zimmer in 2014 to create Zimmer Biomet, the # 2 producer of orthopedic implants in the country.

59.)   Zimmer Biomet was aware that its Taperloc device was defective but continued to market it anyway.

60.)   Eventually, Zimmer Biomet issued a recall on the Taperloc device with which Plaintiff was implanted.

61.)   Patients implanted with Zimmer Biomet Taperloc hip replacements are at increased risk for osteolysis, metallosis, and early device failure.

62.)   This is especially true where the femoral component and the acetabular component are both made of metal.

63.)   Plaintiff was told by Dr. Miller and by a prison medical professional who reviewed post-surgical x-rays that Plaintiff was given a metal-on-metal hip replacement.

## COUNT I
## Eighth Amendment – Deliberate Indifference to a Serious Medical Condition
## (42 U.S.C. § 1983 )

64.)   Plaintiff has a right under the Eighth Amendment of the Constitution to be free from cruel and unusual punishment.

65.)   Cruel and unusual punishment may take the form of deliberate indifference to a serious medical condition.

66.)   Severe pain is a serious medical condition.

67.)   Plaintiff let Defendants Hashmi, McDonnell, and Dr. John Doe. M.D. know repeatedly that he was in severe pain and that the only treatment they provided, Motrin, was completely ineffective.

68.)   Defendant Hashmi was deliberately indifferent to Plaintiff's serious medical need by ignoring blatant evidence that Plaintiff was in severe pain and needed additional diagnostics and/or treatment to alleviate the severe pain.

69.)   Defendant McDonell was deliberately indifferent to Plaintiff's serious medical need by ignoring blatant evidence that Plaintiff was in severe pain and needed additional diagnostics and/or treatment to alleviate the severe pain.

70.)   Defendant Dr. John Doe, M.D. was deliberately indifferent to Plaintiff's serious medical condition by ignoring blatant evidence that Plaintiff was in severe pain and needed additional diagnostics and/or treatment to alleviate the severe pain.

71.)   Warden Donald Sutton was personally involved in the deliberate indifference to Plaintiff's serious medical condition by denying Plaintiff's requests for treatment and/or ratifying policies and/or decisions that forbid the doctors from attending to Plaintiff's severely painful condition.

72.)   John Does A-E were supervisors at MCCI who were personally involved in the deliberate indifference to Plaintiff's serious medical condition by denying Plaintiff's requests for treatment and/or ratifying policies and/or decisions that forbid the doctors from attending to Plaintiff's severely painful condition.

73.)   By knowingly placing a defective device in Plaintiff, Dr. Scott Miller was deliberately indifferent to Plaintiff's serious medical condition.

## COUNT II
## Design Defect under Products Liability Act
## (N.J.S.A. 2A:58C)

74.)   Zimmer Biomet had the duty as a manufacturer of hip replacement devices to make sure the devices were reasonably safe, fit, and suitable hip prosthetics.

75.)    The Zimmer Biomet Taperloc was not reasonably safe for its intended purpose.

76.)   Zimmer Biomet's Taperloc was designed with flaws which pose a danger contrary to the reasonable expectations of hip replacement patients.

77.)   There was a safer alternative to the flawed design of the Zimmer Biomet Taperloc that would not have impaired its usefulness or made it too expensive.

78.)   The Zimmer Biomet Taperloc contained a design defect that places Plaintiff at increased risk for osteolysis, metallosis, and premature failure, which will necessitate his undergoing another operation and having another device implanted in his body.

## COUNT III
## Medical Malpractice

79.)   Defendants Dr. Hashmi, Dr. McDonnell, and Dr. John Doe were negligent in the diagnosis and treatment of Plaintiff's serious medical condition.

80.)   The negligence of these Defendants resulted in Plaintiff becoming disabled and suffering in extreme pain for two years.

81.)   Wellpath is responsible via the principle of respondeat superior for the negligence of its doctors.

82.)   Dr. Scott Miller, by implanting in Plaintiff a device that had been recalled, was negligent in the treatment of Plaintiff, exposing him to increased risk of osteolysis, metallosis, and premature failure, which will necessitate his undergoing another operation and having another device implanted in his body.

83.)   St. Francis Hospital is liable via the principle of respondeat superior for the negligence of its doctors.

## COUNT IV
## Americans with Disabilities Act
### (42 U.S.C. § 12101)

84.)   Prison officials employed by MCCI denied Plaintiff reasonable accommodations that would have permitted him equal access to the prison facilities.

85.)   These denials included denial of living in a prison ward without stairs, denial of the use of a handicap-accessible shower, denial of the use of a lower bunk, denial of the use of a wheelchair, denial of the use of a cane, and other denials.

86.)   These denials violated the Americans with Disabilities Act.

87.)   Kabeeruddin Hashmi, M.D. was directly responsible for denying Plaintiff reasonable accommodations.

88.)   Kevin McDonnell, M.D. was directly responsible for denying Plaintiff reasonable accommodations.

89.)   Dr. John Doe, M.D. was directly responsible for denying Plaintiff reasonable accommodations.

90.)   John Does A-E are supervisors and/or prison employees who were directly responsible for denying Plaintiff reasonable accommodations and/or created policies which denied Plaintiff reasonable accommodations.

91.)   Donald Sutton was directly responsible for denying Plaintiff reasonable accommodations and/or creating policies denying Plaintiff the rights to reasonable accommodations.

92.)   MCCI, County of Monmouth, Department of Corrections – State of New Jersey, and/or State of New Jersey are vicariously liable under the Americans with Disabilities Act for the illegal acts of their employees.

## COUNT V
## New Jersey Law Against Discrimination
### (N.J.S.A. 10:5-12)

93.)   Prison officials employed by MCCI denied Plaintiff reasonable accommodations that would have permitted him equal access to the prison facilities.

94.) These denials included denial of living in a prison ward without stairs, denial of the use of a handicap-accessible shower, denial of the use of a lower bunk, denial of the use of a wheelchair, denial of the use of a cane, and other denials.

95.) These denials violated the New Jersey Law Against Discrimination

96.) Kabeeruddin Hashmi, M.D. was directly responsible for denying Plaintiff reasonable accommodations.

97.) Dr. John Doe, M.D. was directly responsible for denying Plaintiff reasonable accommodations.

98.) John Does A-E are supervisors and/or prison employees who denied Plaintiff reasonable accommodations and/or created policies which denied Plaintiff reasonable accommodations.

99.) Donald Sutton denied Plaintiff reasonable accommodations directly and/or created policies that denied Plaintiff the rights to reasonable accommodations.

100.) MCCI, County of Monmouth, Department of Corrections – State of New Jersey, and/or State of New Jersey are responsible under the Law Against Discrimination for the illegal acts of their employees.

**Wherefore,** Plaintiff Donell Freeman demands judgment against Defendants, together with court costs, applicable statutory attorney fees, and other such relief as the court may deem just and appropriate.

_____

MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: July 23, 2019

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**DESIGNATION OF COUNSEL**

Michael Poreda, Esq. is hereby designated as trial counsel.

**CERTIFICATION PURSUANT TO L.Civ.R. 11.2**

I certify that to the best of my knowledge and upon information and belief, the matter in controversy is not related to or the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

_____
MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: July 23, 2019

11