**MARKS, O'NEILL, O'BRIEN,**
**DOHERTY & KELLY, P.C.**
**BY:  Melissa J. Brown, Esquire**
**Attorney I.D. No.: 012882007**
**535 Route 38 East**
**Suite 501**
**Cherry Hill, NJ  08002**
**(856)663-4300**

**ATTORNEY FOR DEFENDANTS,**
**Wellpath, LLC f/k/a Correct Care**
**Solutions and Kabeeruddin S.**
**Hashmi, M.D.**

1275-107074 (MJB/KTS)

| | |
|---|---|
| Donell Freeman | UNITED STATES DISTRICT COURT OF NEW JERSEY |
| vs. | |
| Kabeeruddin Hashmi, M.D., Kevin McDonnell, M.D., Monmouth County Correctional Institution, Donald Sutton, Correct Care Solutions, d/b/a Wellpath, Scott Miller, M.D., St. Francis Medical Center, Zimmer Biomet Holdings, County of Monmouth, Department of Corrections, State of New Jersey | DOCKET NO.  3:18-cv-7802  CIVIL ACTION |

---

## OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THE THIRD AMENDED THE COMPLAINT

---

On The Brief:
Melissa J. Brown, Esquire

## **PRELIMINARY STATEMENT**

The instant Motion to Amend is the latest in what has been a history of conduct by the Plaintiff to delay the litigation and file untimely pleadings resulting in increased costs and prejudice to Defendants.  Plaintiff files the instant Motion seeking to file yet another Amended Complaint to name Daniel Unachukwu as a defendant in this lawsuit alongside Wellpath, LLC, f/k/a Correct Care Solutions (hereinafter "Wellpath") and Kabeeruddin S. Hashmi, M.D. (hereinafter "Dr. Hashmi"). Plaintiff does so while claiming that he recently discovered Daniel Unachukwu's identity having received Wellpath's discovery responses. However, Plaintiff's own discovery responses and the procedural history of this matter indicate that Plaintiff has had the necessary information to identify Daniel Unachukwa in his possession for no less than **ten months** before filing this Motion. Notably, Plaintiff previously filed a Second Amended Complaint after serving Defendants with the medical records identifying Daniel Unachukwu by name, demonstrating Plaintiff could have named Daniel Unachukwu as a defendant previously, but declined to do so.

Further, a review of the proposed Third Amended Complaint indicates that Defendants would be unduly prejudiced if Plaintiff was permitted to file this pleading. A review of the proposed pleading demonstrates that it suffers from the same deficiencies as its predecessors. Defendants have already been forced to incur the time and expense of filing two Motions to Dismiss due to Plaintiff's early wasteful amendments.[1]  The Second Motion to Dismiss which was filed in January 2020 remains pending before this Court. If the Court accepts Plaintiff's proposed

---

[1] Plaintiff voluntarily dismissed the manufacturer and surgeon in 2019.  Having already dismissed those claims, Plaintiff wastefully filed the Second Amended Complaint (without leave of Court) which did nothing more than remove those claims which had already been voluntarily dismissed.  This resulted in the termination of Defendants' Motion to Dismiss causing litigation delay and the need for Defendants  to incur time and expense in having to file a second Motion to Dismiss.

Third Amended Complaint, the currently pending motion will be terminated and Defendants will be forced to file a third Motion to Dismiss.  This will delay the litigation further likely resulting in another year long delay in advancing the litigation.

The proposed amendment is also futile. The claims alleged against Daniel Unachukwu fail to meet the threshold requirements as outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Finally, Plaintiff's "John Doe" designations in his original Complaint violate the requirements of Federal Rule of Civil Procedure 15(c)(1), and accordingly, Plaintiff's proposed amendments do not relate back to the date on which the original Complaint was filed. Thus, as outlined herein, Plaintiff's Motion to Amend should be denied.

## **LEGAL ARGUMENT**

Federal Rule of Civil Procedure 15(a)(1) provides that a party "may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  In the present instance, it is beyond dispute that the Plaintiffs cannot meet the requirements of Fed. R. Civ. P. 15(a)(1), the Amended Complaint which the Plaintiffs seek to amend for a third time, *well beyond* the 21 day limit.

Barring such an amendment, Fed. R. Civ. P. 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  In this instance, the opposing parties, Wellpath and Hashmi, have not given consent for the filing of Plaintiff's proposed amendment. The Supreme Court has held that a court may deny a Motion for Leave to Amend for reasons

which include, but are not limited to: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of the allowance of the amendment; or (5) futility of amendment. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122. "The same standard applies when considering a request to add or drop parties." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir. 1998) (emphasis added).

In the present case, the basis which clearly exist for the denial of the Plaintiff's motion for leave to amend, outweighs any legitimate basis for permitting such an amendment at this late date. This tardy amendment will cause undue delay and significant prejudice to Defendants in the form of costs, time and delays in the litigation. Further, the proposed amendment is futile and would be nothing more than an act which wastes judicial and party resources. For the reasons set forth below, Plaintiff's motion should be denied.

## I.    UNDUE DELAY EXISTS FOR THE PROPOSED AMENDMENT.

The Third Circuit has held that delay may become undue when a movant has had previous opportunities to amend a complaint. *See, Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d. Cir. 1993) (three year lapse between filing of complaint and proposed amendment was "unreasonable" delay where plaintiff had "numerous opportunities" to amend); *Rolo*, 155 F.3d at 654-55 (3d Cir. 1998) (rejecting proposed second amended complaint where plaintiffs were re-pleading facts that could have pled earlier). When a party delays making a motion to amend until after termination of an adverse party, other courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling. *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). When the question of undue delay arises, a trial court must "focus on the plaintiffs' motives

for not amending their complaint to assert this claim earlier." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

Plaintiff argues that he only recently became aware of Daniel Unachukwu's identity after receiving Defendant Wellpath's Answers to Interrogatories in August. However, Plaintiff's own discovery responses and the procedural history of this matter demonstrate that representation is inaccurate.  On October 23, 2019, Plaintiff served Defendants Wellpath and Dr. Hashmi with Plaintiff's MCCI medical records, which include several records that identify Daniel Unachukwu by name. (*See MCCI Medical Records, Exhibit A, CCS 00045, CCS 00060, CCS 00064).* Thus, information regarding Daniel Unachukwu's identity has been within the knowledge of Plaintiff for at least ten months, during which time Plaintiff took no steps to amend the complaint.

Additionally, Plaintiff filed his Second Amended Complaint on December 29, 2019, more than two months after serving Defendants Wellpath and Dr. Hashmi with the MCCI medical records. Consequently, Plaintiff was in possession of the materials necessary to identify Daniel Unachukwu and bring him into the lawsuit at the time Plaintiff filed his Second Amended Complaint, but declined to do so.  Plaintiff cannot be given yet another opportunity to amend his Complaint to assert claims against Daniel Unachukwu when he was perfectly capable of doing so in December of 2019.  Plaintiff has been in possession of medical records identifying Daniel Unachukwu for more than a year, and in fact, filed the Second Amended Complaint while in possession of same. Plaintiff's motion fails to set forth any basis for his undue delay in seeking to name Daniel Unachukwu as a defendant.  Therefore, Plaintiff's Motion should be denied.

## II.    A DECISION TO GRANT PLAINTIFF'S MOTION TO AMEND WOULD RESULT IN UNDUE PREJUDICE TO DEFENDANTS.

The Third Circuit has opined that although a trial court has discretion under Federal Rule of Civil Procedure 15(a) to grant amendments, this discretion "must be tempered by considerations

of prejudice to the non-moving party." *Heyl & Patterson International, Inc. v. F. D. Rich Housing, Inc.*, 663 F.2d 419, 425 (3d Cir.1981).   According to the Third Circuit, "[i]t s well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. OSHRC*, 573 F.2d 820, 823 (3d Cir. 1978).

Defendants' Second Motion to Dismiss has been pending since January 2020.   In that Motion, Defendants Wellpath and Dr. Hashmi argue Plaintiff's Second Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to seek leave of Court before filing a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). As Plaintiff correctly notes in Footnote 1 of his moving papers, Defendants Wellpath and Dr. Hashmi originally filed a Motion to Dismiss in December of 2019. After Plaintiff filed his procedurally deficient Second Amended Complaint, Defendants Wellpath and Dr. Hashmi were forced to refile a new Motion to Dismiss to more specifically address the deficiencies of the Second Amended Complaint. If the Court grants Plaintiff's request for leave to file his Third Amended Complaint, the currently pending Motion will be terminated.   Defendants will therefore be forced to file yet another Motion to Dismiss. Defendants have already expended significant time and resources  preparing and filing their original Motion to Dismiss and the subsequent second Motion to Dismiss.   Requiring Defendants to file a third Motion to Dismiss will cause undue prejudice.  Defendants will be forced to expend time and incur additional fees and expenses to prepare and file a third Motion to Dismiss.[2]

Moreover, Plaintiff initiated this lawsuit on April 16, 2018, more than two years before the instant Motion to Amend was filed. Plaintiff's decision to file multiple amendments to his

---

[2] **Plaintiff erroneously argues that Defendants' Motion to Dismiss should remain pending.  Of course, that cannot occur as the controlling pleading would be the Third Party Complaint and the currently pending**

Complaint has already caused significant delays in this case. If Plaintiff is permitted to file his Third Amended Complaint, it is unlikely that the Court will rule on Defendant's third Motion to Dismiss before mid to late 2021. There is no question that such a delay would be unduly prejudicial to Defendants Wellpath and Dr. Hashmi, as Defendants will be required to endure the obligations, expenses, and stress of this litigation for a significantly longer period of time than they expected, or that a reasonable person would expect. Their memories will continue to fade.  Further, Wellpath has not been the medical provider at Monmouth County Correctional Institution since 2018. Plaintiff's delays have already prejudiced Wellpath's access to records and witnesses. Defendants are entitled to a timely resolution of the case. Plaintiff's litigation delays should not prejudice Defendants.  Based on the foregoing, Plaintiff's Motion should be denied.

## III.    PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE BECAUSE THE ALLEGATIONS AGAINST DANIEL UNACHUKWU ARE DEFICIENT.

In the proposed Third Amended Complaint, Plaintiff adds few factual allegations against Daniel Unachukwu. Instead, Plaintiff merely replaces "Dr. John Doe, M.D." with "Daniel Unachukwu" in Counts I through IV, changes the legal allegation in Count I from an Eighth Amendment deliberate indifference claim under 42 U.S.C. §1983 to a Fourteen Amended deliberate indifference claim, and clarifies Paragraph 82 of the Complaint to focus the allegation contained therein on the County of Monmouth. (*See Pl. Prop. 3d Am. Compl.*, *¶¶ 11, 54, 57, 60, 63 72, 79, 82).* In fact, the only new averment Plaintiff adds to his Complaint is that Daniel Unachukwu "poses as a treating physician at MCCI, but he is actually only registered with the State of New Jersey as a nurse and nurse practitioner." (*Id.*, *¶ 11).* The remaining factual allegations against Daniel Unachukwu in the proposed Third Amended Complaint are those in

---

Motion does not address the claims against Nurse Unachukwu.  The filing of a Third Amended Complaint would trigger the filing of a third Motion to Dismiss by Defendants.

which Daniel Unachukwu's name has been added alongside other defendants in pre-existing factual averments. (*Id.*, ¶¶ *40, 59*).

A review of all the allegations against Daniel Unachukwu demonstrates that Plaintiff has not set forth sufficient factual averments against him to satisfy the threshold requirements of *Twombly* and *Iqbal*. For the reasons set forth below, the allegations contained in the proposed Third Amended Complaint as to Daniel Unachukwu fail as a matter of law and are, therefore, futile. As such, Plaintiff's Motion to Amend should be denied.

**A.    The proposed amended complaint does not set forth a valid cause of action against Daniel Unachukwu for deliberate indifference under 42 U.S.C. § 1983.**

The Court must deny Plaintiff's request to amend his Complaint with respect to Count I, as Plaintiff's 42 U.S.C. § 1983 claim against Daniel Unachukwu does not allege facts to establish the deprivation of a constitutionally protected right.  § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

To state a claim for relief under §1983, a plaintiff must allege, first, a violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  The plaintiff is afforded no substantive rights under § 1983.  Rather, § 1983 provides a remedy for violations of rights created by other laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

In this case, Plaintiff's proposed amendment to Count I of his Complaint adds Daniel Unachukwu as a defendant and changes the cause of action against all defendants from an Eighth Amendment to a Fourteenth Amendment deliberate indifference claim to account for Plaintiff's

status as a detainee, rather than a prisoner. The Supreme Court has held that due process rights of a detainee under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Consequently, "at a minimum the 'deliberate indifference' standard of *Estelle v. Gamble,* must be met," for both pretrial detainees and convicted and sentences inmates. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 n.31 (3d Cir. 1987) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

Thus, to establish a Fourteenth Amendment violation for deliberate indifference, a plaintiff must allege facts showing that a defendant's acts or omissions were more harmful than mere medical malpractice such that they offended the "evolving standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In *Estelle*, the Supreme Court explained:

> [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

The *Estelle* standard "requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).

The deliberate indifference standard presents a high threshold for a plaintiff to overcome. *Coletta v. Board of Freeholders of Ocean County*, 2007 U.S. Dist. LEXIS 2717, at 15 (3d Cir. 2007) (citing, *Estelle*, supra, 429 U.S. at 105-06). Not every claim rises to the level of a constitutional violation. "**An unwitting failure to provide adequate medical care, a negligent diagnosis or treatment, or even medical malpractice, does not support a valid [deliberate indifference] claim.**" *Coletta*, supra, 2007 U.S. Dist. LEXIS 2717, at 15 (citing, *Estelle*, supra, 429 U.S. at 106) (emphasis added). This Court has held that denying an inmate access to an electric

knee brace for physical therapy, and modifying the inmate's medications do not constitute deliberate indifference. *Coletta*, supra, 2007 U.S. Dist. LEXIS 2717, at 22.

It is well-settled that claims of negligence or malpractice, without a showing of some more culpable state of mind, do not establish deliberate indifference. *Horne v. United States, 223 Fed. Appx. 154 (3d Cir. 2007)* (citing, *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). ). "[A] court will generally not find deliberate indifference when some level of medical care has been offered to the inmate." *Brown v. Monmouth County Sheriff's Dep't of Corr. & Med. Dep't*, 2005 U.S. Dist. LEXIS 45050, at 27 (D.N.J. 2005) (citing, *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002.)) Since there are many ways to treat an illness or ailment, courts generally do not hold prison doctors to the recommendations of other doctors. See, *White v. Napoleon*, 897 F.2d 103, 109-10 (3d Cir. 1990). "Mere disagreement over acceptable treatment" does not amount to a violation. *Napoleon*, 897 F.2d at 110. Moreover, a prisoner's subjective dissatisfaction with medical care does not in itself indicate deliberate indifference. *Abdul-Aziz v. Knight,* 2007 U.S. Dist. LEXIS 6060, at 7 (D.N.J. 2007) (citing, *Andrews v. Camden County*, 95 F.Supp.2d 217, 228 (D.N.J. 2000)).

This Court has been clear:

> Neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures can amount to cruel and unusual punishment.

*Pilkey v. Lappin*, 2006 U.S. Dist. LEXIS 44418 (D.N.J. 2006).

In reviewing the proposed Third Amended Complaint, Plaintiff alleges nothing more than his subjective dissatisfaction with the pain medicine and the treatment he received. (*See generally Pl. Prop. 3d Am. Compl.).* Plaintiff fails to assert that the treatment he received from Daniel Unachukwu amounted to something more than a subjective dissatisfaction with care. Plaintiff

concedes that he was seen by Daniel Unachukwu, underwent diagnostic tests, and received medication. In fact, Plaintiff concedes that a radiologist read his diagnostic studies. The treatment Plaintiff received from Defendants was based on the radiologist's findings. Additionally, there is no dispute that Plaintiff was provided with medical care following his complaints and continuing through his incarceration. While Plaintiff may have wanted different care, be it in the form of pain medication or diagnostic studies, his failure to receive the care he wanted in the face of receiving alternate care simply does not meet the threshold requirements for deliberate indifference. Notably, in the Factual Background of the proposed Third Amended Complaint, Plaintiff fails to allege an intentional act by Daniel Unachukwu to delay or deny medical care to Plaintiff. In fact, the medical records produced in discovery demonstrate that Daniel Unachukwu rendered treatment to Plaintiff by prescribing pain medication on March 24, 2016 and ordering that Plaintiff be allowed to wear his own orthopedic shoes on July 13, 2016 for his chronic left hip pain. *(See MCCI Medical Records, Exhibit A, CCS 00045, CCS 00060, CCS 00064).* The fact that Plaintiff did not receive the particular medicine or other treatment he was seeking does not, alone, give rise to deliberate indifference.

This is not a case of denial of medical care by Daniel Unachukwu, but rather subjective dissatisfaction with the care and treatment provided similar to the holdings in *Coletta*, *White*, *Pilkey*, and *Abdul-Aziz*. As it is well-settled that claims of deliberate indifference, without a showing of some more culpable state of mind, do not give rise to a constitutional claim; thus, Plaintiff's deliberate indifference claim in his proposed Third Amended Complaint must be rejected as futile.

**B.** **The proposed amended complaint does not set forth a valid cause of action against Daniel Unachukwu for a violation of the Americans with Disabilities Act under 42 U.S.C. § 12101.**

Plaintiff should not be permitted to amend his Second Amended Complaint to add Daniel Unachukwu under Count III because Plaintiff fails to plead a cause of action for a violation of the American Disabilities Act ("ADA"). The Third Circuit has advised that "[t]o successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Haberle v. Troxell*, 885 F.3d 171, 178 (2018), quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007).

Here, Plaintiff has asserted that he is a qualified individual and that he has a disability. (*See generally Pl. Prop. 3d Am. Compl.*). However, he has not set forth facts demonstrating that he has a qualifying disability or that he "was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity." *Haberle,* 885 F.3d at 178. Title II does not specifically define the terms "services, programs, or activities of a public entity" but it is clear from prior rulings of this Court that these rights extend to incarcerated individuals. *Purcell v. Pennsylvania Dep't of Corrections*, 1998 U.S. Dist. LEXIS 105 (E.D. Pa. 1998).

"Disability" is defined in the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). An individual suffers a substantial limitation on a major life activity if that person is "significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in

the general population can perform that same major life activity." *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (quoting 29 C.F.R. § 1630.2(j)).

A cause of action exists under Title II only if a qualified individual with a disability was discriminated against or denied the benefits of a public entity's programs or services. *See* 42 U.S.C. § 12132. In prison situations, courts must be careful when applying anti-discrimination statutes to give weight to the unique needs of prison administration. If the challenged prison policies concerned security, then they "'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Turner v. Safley*, 482 U.S. 78, 86, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987) (*quoting Pell v. Procunier*, 417 U.S. 817, 827, 41 L. Ed. 2d 495, 94 S. Ct. 2800 (1974)).

Further, although there may be a claim for a violation of the ADA against prison officials who are considered part of the public entity, the same cannot be said for entities that simply contract with the facility, such as Wellpath, Dr. Hashmi, and Daniel Unachukwu. 42 U.S.C. § 12131 defines "public entity" as (a) any State or local government; (b) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (c) the National Railroad Passenger Corporation, and any other commuter authority. The Third Circuit previously agreed with the logic forwarded by the Eleventh Circuit in finding "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews v. Pa. Dep't of Corr.*, 613 Fed. Appx. 163 (3rd Cir. 2015) (citing *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)); See also *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (holding that a private hospital performing government services by contract

is not an "instrumentality" of the government); *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) (holding that a private medical provider with a contract to serve a prison was not a government entity).

Here, Plaintiff's proposed Third Amended Complaint fails to allege that he has a disability that entitles him to relief under the ADA. In addition, he fails to assert a theory under which such a cause of action may be pursued against Daniel Unachukwu. At best, Plaintiff alleges that at various stages of his incarceration between 2011 and 2017, he complained of pain stemming from the injury he sustained at Northern State Prison. (*See generally Pl. Prop. 3d Am. Compl.*). However, subjective complaints alone without any further diagnoses do not qualifying as a disability under the Act. Further, Plaintiff has not alleged that he was denied the benefits of the services, programs, or activities of a public entity. To that end, neither Daniel Unachukwu, Dr. Hashmi, nor Wellpath are public entities. Rather, Wellpath, which employs Dr. Hashmi and Daniel Unachukwu, is a private entity that contracts with Monmouth County Department of Correction for the provision of medical care. Moreover, Plaintiff's proposed Third Amended Complaint concedes, and Plaintiff's medical records demonstrate, that he was provided with medical care and treatment. Thus, he was not excluded from participation in medical services.

Likewise, Plaintiff fails to allege that Wellpath, Dr. Hashmi, or Daniel Unachukwu were able to provide for Plaintiff other than for purposes of provision of medical care. Plaintiff was within the custody and control of Monmouth County. Plaintiff has not alleged that Wellpath, Dr. Hashmi, or Daniel Unachukwu denied him the benefits of a public entity's programs or services or that same was denied because of his alleged disability. As such, Plaintiff has failed to allege facts to establish a cause of action under the ADA and the claim under Plaintiff's proposed Third Amended Complaint is deficient on its face.

**C.      Plaintiff's proposed negligence and NJ LAD claims must be dismissed as Plaintiff has failed to establish supplemental jurisdiction by neglecting to show the existence of a federal question under § 1983 or § 12101.**

Plaintiff's claims of negligence and discrimination arising under New Jersey law must be dismissed for lack of supplemental jurisdiction. Plaintiff has failed to establish a federal question under § 1983 or § 12101. Section 1367 affords parties the right to present state law claims to the federal courts under the threshold of supplemental jurisdiction where adjudication of the federal and state causes of action are so related that they form part of the same case or controversy. However, § 1367(c)(3) provides that "the district courts may decline to exercise supplemental jurisdiction over a claim … if the district court has dismissed all claims over which it has original jurisdiction."

This Court has recognized that,

> where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.

*Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (the circuit court having dismissed plaintiff's § 1983 claims and finding no extraordinary circumstances, refused to exercise supplemental jurisdiction over the plaintiffs' state-law claims) (*citing, Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995); *See e.g., Riley v. Saint Louis County*, 153 F.3d 627, 629 (8th Cir. 1998) (the circuit court declined to exercise supplemental jurisdiction of state causes of actions after dismissing plaintiff's federal claims); *Winstead v. Midwest Renal Care, Inc.,* 2007 U.S. Dist. Lexis 79808 (NDIL 2007) (the district court having dismissed the only federal claims, declined to exercise supplemental jurisdiction over the state claims asserted in plaintiff's complaint). Thus, where a plaintiff fails to successfully assert a federal question, it is respectfully submitted that the court should decline to exercise supplemental jurisdiction over a plaintiff's state law claims.

In this case, Plaintiff's proposed Third Amended Complaint has failed to assert a claim under federal question jurisdiction.  Plaintiff's claims of deliberate indifference and a violation of the ADA against Daniel Unachukwu and all the pre-existing defendants are deficient on their face. Absent establishing a Federal cause of action, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and should find Plaintiff's proposed Third Amended Complaint to be futile.

> **D.**    **The proposed amended complaint does not set forth a valid cause of action against Daniel Unachukwu for negligence.**

Even if the Court were to exercise supplemental jurisdiction over Plaintiff's negligence claims, the Court must still reject Count II of Plaintiff's proposed Third Amended Complaint against Daniel Unachukwu because the claim does not satisfy the *prima facie* elements of negligence. In considering claims of negligence, "[w]e start with the basic proposition that ordinarily negligence must be proved and will never be presumed, that indeed there is a presumption against it, and that the burden of proving negligence is on the plaintiff." *Buckelew v. Grossbard*, 87 N.J. 512, 525 (1981); *Hansen v. Eagle-Picher Lead Co.*, 8 N.J. 133, 139 (1951). The three elements of a negligence cause of action in New Jersey are: (i) a duty of care owed by defendant to the plaintiff; (ii) a breach of that duty by defendant; and (iii) an injury to plaintiff proximately caused by defendant's breach. *Endre v. Arnold*, 300 N.J.Super. 136, 142 (App. Div.) *certif. denied*, 150 N.J. 27 (1997).

To state a claim of negligence, a plaintiff must allege that the defendant's actions breached the duty of care and were the proximate cause of his injury.  See *Creanga v. Jardal*, 185 N.J. 345 (2005).  "To be a proximate cause...conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by an superseding cause, and which is a substantial factor in producing the particular injury." *Bender v. Rosen*, 247 N.J. Super 219, 229 (App. Div. 1991).

Here, Plaintiff failed to assert a *prima facie* case of negligence as to Daniel Unachukwu. Plaintiff's proposed Third Amended Complaint demonstrates, as do the medical records produced in discovery, that Plaintiff received care and treatment from Daniel Unachukwu during his incarceration. *(See generally Pl. Prop. 3d Am. Compl.; see also MCCI Medical Records, Exhibit A, CCS 00045, CCS 00060, CCS 00064).* The only factual averments regarding Plaintiff's negligence claim against Daniel Unachukwu are Plaintiff's subjective beliefs that Daniel Unachukwu "lied" about the results of a diagnostic x-ray performed and interpreted by other medical professionals and dismissed Plaintiff's limping as pain from an old fracture that had healed. Of course, the report from the diagnostic study reads for itself and is consistent with the information conveyed to Plaintiff. Daniel Unachukwu's alleged reliance on the findings of the interpreting radiologist, without more, is insufficient to support Plaintiff's claim that Daniel Unachukwu deviated from the standard of care.

Moreover, Plaintiff's medical records demonstrate Daniel Unachukwu did not dismiss Plaintiff's pain. Specifically, the records show that while Daniel Unachukwu rendered treatment to Plaintiff on only two occasions, on each occasion, Daniel Unachukwu directly addressed Plaintiff's complaints by prescribing pain medication and ordering that Plaintiff be allowed to wear his own orthopedic shoes. Given these facts, which directly contradict Plaintiff's factual averments, the only remaining allegation against Daniel Unachukwu under Count II of the proposed Third Amended Complaint is that Daniel Unachukwu "[was] negligent in the diagnosis and treatment of Plaintiff's serious medical condition." Merely asserting the word "negligence" in a pleading is not sufficient to satisfy the standards set forth by *Twombly* and *Iqbal*. Consequently, the allegations under Count II of the proposed Third Amended Complaint are insufficient and should be rejected as futile.

**E.     The proposed amended complaint does not set forth a valid cause of action against Daniel Unachukwu for a violation of the New Jersey Law Against Discrimination under *N.J.S.A.* 10:5-12.**

Similar to his ADA claim above, Plaintiff's proposed claim against Daniel Unachukwu under the New Jersey Law Against Discrimination ("LAD") is deficient on its face.  The LAD mimics the ADA.  The New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-12, makes it unlawful to discriminate or harass on the basis of the following: race, creed, color, national origin, nationality, ancestry, sex, pregnancy, breastfeeding, sexual orientation, gender identity or expression, disability, familial status, marital status, domestic partnership/civil union status, liability for military services, and in some cases atypical hereditary cellular or blood trait, genetic information, and age. It prohibits unlawful discrimination in employment, housing, places of public accommodation, credit and business contracts.

In construing the LAD, the New Jersey Supreme Court looked to federal precedent regarding Title VII of the Civil Rights Act of 1964. *Lehmann v. Toys 'R' Us*, 132 N.J. 587, 600 (1993). However, such standards from the federal level are fluid and courts will depart "if a rigid application of its standards is inappropriate under the circumstances. *Grogoletti v. Ortho Pharm,. Corp.*, 118 N.J. 89, 107 (1990).

The LAD is neither fault nor intent-based. *Lehmann*, 132 N.J. at 604. "The purpose of the LAD is to eradicate discrimination, whether intentional or unintentional." *Id*. at 604-05. By declaring as a "civil right" that all persons shall have "the opportunity to obtain employment," N.J.S.A. 10:5-4, the Law prohibits employers from discriminating against employees because of their disability, N.J.S.A. 10:5-12(a).

The LAD simply does not apply to Daniel Unachukwu. The matters concerning Daniel Unachukwu, as well as Wellpath and Dr. Hashmi, do not involve employment, housing, places of public accommodation, credit or business contracts.  Rather, the allegations deal only with medical

care and treatment provided to Plaintiff during his incarceration at MCCI. The LAD has never been applied to an independent medical provider in a prison setting. Much like Moving Defendants' argument forwarded above, Daniel Unachukwudid did not control Plaintiff's accommodations. Plaintiff, at all relevant times, was under the custody and control of Monmouth County.

Based on the foregoing, Plaintiff failed to plead a theory under which recovery within *N.J.S.A.* 10:5-2 against Daniel Unachukwu is possible. Accordingly, the Court should not permit Count IV of Plaintiff's proposed Third Amended Complaint to proceed.

## IV.   PLAINTIFF'S ATTEMPT TO AMEND HIS JOHN DOE PLEADINGS VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 15(c) AND RELATED CASE LAW.

Plaintiff's proposed Third Amended Complaint should be rejected for failure to satisfy the requirements of Federal Rule of Civil Procedure 15(c) and related case law for "John Doe" defendants. Federal Rule of Civil Procedure 15(c) governs the relation back of amendments to pleadings. "Replacing a 'John Doe' caption with the newly named defendants' correct names amounts to 'changing a party' within the meaning of Rule 15(c)." *Cruz v. City of Camden*, 898 F. Supp. 1100, 1106 (D.N.J. 1995). Rule 15(c)(1) sets forth the following requirements for relation back of amendments to the date of the original pleading:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought
> against it, but for a mistake concerning the proper party's identity.

In reviewing the proposed Third Amended Complaint, there can be no question that Plaintiff's deliberate indifference claim under § 1983 and his negligence claim are governed by a two-year statute of limitations. Under New Jersey law, a medical malpractice claim must be commenced "within two years next after the cause of any such action shall have accrued." *N.J.S.A.* 2A:14-2; *see also Ginsberg ex rel. Ginsberg v. Quest Diagnostics, Inc.*, 441 N.J. Super. 198, 225 (App. Div. 2015) ("New Jersey's statute of limitations for medical malpractice, *N.J.S.A.* 2A:14-2, is two years, subject to equitable tolling of that two-year period pursuant to our discovery rule"). With respect to Plaintiff's § 1983 claim, a two-year statute of limitations also applies to this claim because "the statute of limitations is determined by borrowing the state's general or residual statute for personal injury actions." *Cruz,* 898 F.Supp. 1106. A cause of action accrues when "the plaintiff knows of his or her injuries and of facts sufficient to attribute those injuries to the fault of another." *Viviano v. CBS, Inc.*, 101 N.J. 538, 546 (1986). Similarly, a cause of action accrues under § 1983 when a person "knew or had reason to know of the injury that constitutes the basis of this action" *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 197 n. 16 (3d Cir. 1984) (quoting *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (per curiam)).

Here, Plaintiff was aware of his negligence and § 1983 deliberate indifference claims, at the latest, on December 12, 2017, when Plaintiff underwent a total hip replacement. This surgery followed several years of medical treatment in various correctional facilities by Wellpath, its medical professionals, and others. Thus, by the date of Plaintiff's hip replacement, he was aware of the alleged negligence and deliberate indifference and could attribute his alleged harms to the defendants.

There is no dispute that Plaintiff initiated his § 1983 deliberate indifference and negligence claims in a timely fashion on April 16, 2018. Plaintiff now seeks to amend various "John Doe" designations from his original Complaint to add Daniel Unachukwu's name in their place. Based on the applicable two-year statute of limitations for these claims, the last date on which Plaintiff was permitted to amend his Complaint within the statute of limitations was December 12, 2019. However, the instant Motion to Amend was not filed until September 3, 2020, more than eight months after the aforementioned deadline.  As a result, Plaintiff's attempt to change his "John Doe" pleadings to Daniel Unachukwu is untimely.  In addition, because Plaintiff is attempting to change a party, rather than assert a new claim or defense, the only way Plaintiff's proposed amendments will be allowed is if they relate back to the date on which his original complaint was filed.

In regard to Plaintiff's ADA claim, federal courts are also directed to apply the state's personal injury statute of limitations to federal claims alleging violations of Title II of the ADA. *Kwasi Sekou Muhammad v. Dep't of Corr.*, 645 F.Supp.2d 299, 309 (D.N.J. 2008) (citing *Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority*, 539 F.3d 199, 208 (3d Cir. 2008)). Moreover, like the accrual standard for § 1983 claims, a cause of action under the ADA accrues "when they knew, or had reason to know, of the injury that is the basis of the action." *hip (Heightened Independence & Progress), Inc. v. Port Auth. of N.Y. & N.J.*, 2008 U.S. Dist. LEXIS 25368, *6-7 (D.N.J. 2008) (citing *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003)).  In this case, the same reasoning that was applied to Plaintiff's § 1983 deliberate indifference and negligence claims is equally relevant to his ADA claim, given that the statute of limitations and accrual period are the same for all three claims.  Accordingly, the latest Plaintiff could have amended his complaint to include an ADA claim against Daniel Unachukwu within

the statute of limitations period was December 12, 2019.  Thus, the only way Plaintiff's proposed

ADA claim against Daniel Unachukwu can survive is if it relates back to the date on which his

original complaint was filed.

Concerning Plaintiff's NJ LAD claim, it is clear from the language of the statute that the

NJ LAD does not apply to Plaintiff's case.  Nonetheless, if the Court determines the NJ LAD does

apply, New Jersey common law has set forth a two-year statute of limitations for alleged violations

of the statute. *Rodriguez v. Raymours Furniture Co., Inc.*, 225 N.J. 343, 356 (2016) (citing

*Montells v. Haynes*, 133 N.J. 282 (1993)).  Therefore, the same analysis that has been applied to

Plaintiff's § 1983 deliberate indifference, negligence, and ADA claims would also apply to his NJ

LAD claim.  Accordingly, Plaintiff's attempt to allege a NJ LAD claim against Daniel Unachukwu

is untimely, and Plaintiff must rely on the relation back doctrine for his claim to survive.

This Court has stated that "Rule 15(c)(1) mandates analysis of New Jersey state law to

determine if it would permit the relation back of the proposed amendment." *Cruz*, 898 F.Supp. at

1107.  Pursuant to New Jersey Court Rule 4:9-3, an amendment relates back to the date of the

original complaint if it "arose out of the conduct, transaction or occurrence set forth or attempted

to be set forth in the original pleading."  Additionally, for an amendment changing the party against

whom a claim is made to relate back to the date of the original complaint, a plaintiff must also

show the following:

> that party (1) has received such notice of the institution of the action that the party
> will not be prejudiced in maintaining a defense on the merits, and (2) knew or
> should have known that, but for a mistake concerning the identity of the proper
> party, the action would have been brought against the party to be brought in by
> amendment.

*R.* 4:9-3.  Defendants do not dispute that the proposed claims against Daniel Unachukwu arise

from the same conduct, transaction or occurrence set forth in the original pleading, or that the other

two requirements under *R.* 4:9-3 are satisfied.  Rather, Defendants dispute whether Plaintiff's

proposed amendments violate New Jersey Court Rule 4:26-1, which governs the practice of "fictitious names," including "John Doe" designations, under the relation back doctrine. To properly designate a fictitious party in a complaint, *R.* 4:26-1 requires "an appropriate description sufficient for identification." For a description of a fictitious party to be appropriate, "a concise designation of a 'John Doe' defendant is needed," which includes the party's specific position *and* specific acts. *Cruz*, 898 F.Supp. at 1108-09 (emphasis added).

In this case, many of the amendments in the Proposed Third Amended Complaint merely insert Daniel Unachukwu's name in place of the fictitious pleading designation, "Dr. John Doe, M.D. In the original Complaint, "Dr. John Doe, M.D." is described as "an employee of Wellpath and/or MCCI. Dr. John Doe, M.D. is a male who, on information and belief, is an immigrant from Africa." *(See Pl. Compl., ¶ 11).* In reviewing this description, it fails to satisfy the requirements of *R.* 4:26-1 because it does not accurately specify Daniel Unachukwu's position. As Plaintiff himself acknowledges in his proposed Third Amended Complaint, Daniel Unachukwu is not a doctor; rather, he is a nurse practitioner.

Additionally, Plaintiff's description of "Dr. John Doe, M.D." is also deficient because Plaintiff failed to provide sufficient statements regarding Dr. John Doe, M.D.'s specific acts. In Paragraph 11 of the original Complaint, in which Plaintiff first names Dr. John Doe, M.D., the only descriptive statement he offers is that Dr. John Doe, M.D. is an employee of Wellpath and/or MCCI that may be an immigrant from Africa. Such a description is overly broad and could encompass several different people who are employed by Wellpath or MCCI. Further, this broad description is similar to two descriptions found to be insufficient under *R.* 4:26-4 by this Court in *Cruz v. City of Camden.* In *Cruz*, this Court determined that descriptions of five "John Doe" Correction Officers and two "John Doe" Police Officers, respectively, were not sufficient to satisfy

R. 4:26-4. *Cruz*, 898 F. Supp. 1109.  Specifically, the five Corrections Officers were described as "employees of the Camden County Jail responsible for the safekeeping and supervision of the prisoners and detainees including the plaintiff"; whereas the two Police Officers were described as "individuals who, at all times relevant to this action were employed by defendant City of Camden as police officers." *Id.*  While this Court ultimately permitted amendments for two of the five "John Doe" Corrections Officers, this determination was based on the fact that the plaintiff provided an additional description in the original complaint of a specific act by those two officers, namely, a bodily cavity search. *Id.* at 1109-10.

Here, the description of "Dr. John Doe, M.D." is even less descriptive than the statements presented by the plaintiff in *Cruz*. Moreover, unlike the plaintiff in *Cruz*, Plaintiff in this case did not offer any additional factual averment of a specific act by Daniel Unachukwu that would substantiate Plaintiff's description of him in the original descriptive statement. Defendants anticipate that Plaintiff will rely on one allegation in the Factual Background section of the original Complaint as an example of a specific act, which states, "[t]reating doctors at MCCI lied about the x-ray, telling Plaintiff that the pain he was experience was just the result of an old fracture that had healed." *(See Pl. Compl., ¶ 40).* However, "Dr. John Doe, M.D." was not alleged to have engaged in this particular act in the original complaint, and "Dr. John Doe, M.D." was not described originally as one of Plaintiff's treating doctors. Finally, although there are additional references to Dr. John Doe, M.D., in the original causes of action, these averments constitute legal conclusions and are not sufficient to serve as allegations of specific acts under *R.* 4:26-1.

Accordingly, Plaintiff cannot relate his proposed amendments back to the date of the original Complaint under New Jersey law. As a result, Plaintiff's proposed Third Amended

Complaint fails to comply with the requirements of Federal Rule of Civil Procedure 15(c)(1) and should be rejected by this Court.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiff's Motion to Amend the Complaint.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

_/s/ Melissa J. Brown_
Melissa J. Brown, Esquire
Attorney for Defendants,
Wellpath, LLC and Kabeeruddin S. Hashmi, M.D.