# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

DONNELL FREEMAN,

          Plaintiff,

v.

KEVIN MCDONNELL, et al.,

          Defendants.

Civil Action No. 18-7802 (BRM) (ZNQ)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an opposed Motion to Dismiss (ECF No. 59), filed by Defendants Wellpath, LLC, and Kabeeruddin Hashmi, M.D., seeking to dismiss Plaintiff Donnell Freeman's ("Plaintiff") Second Amended Complaint filed pursuant to 42 U.S.C. § 1983, with prejudice (ECF No. 55). Also pending before the Court is Plaintiff's motion to amend to permit a third amended complaint (ECF No. 67), which Defendants oppose (ECF No. 68).

The third amended complaint lists the following defendants: Monmouth County Correctional Institution ("MCCI"), Warden Donald Sutton, MCCI Supervisors John Does A-E, Correct Care Solutions, LLC d/b/a/ Wellpath, Kabeeruddin Hashmi, M.D., Kevin McDonell,[1] M.D., Daniel Unachukwu, and County of Monmouth. (ECF No. 67-2 ¶¶ 5–12.)

Plaintiff alleges federal violations under 42 U.S.C. § 1983; the American with Disabilities Act, the New Jersey Law Against Discrimination; and tort claims under New Jersey law. Plaintiff seeks "judgment" together with court costs, attorneys' fees and any other appropriate relief. (*Id.* at 17.) Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons sets forth below,

---

[1] Kevin McDonnell, M.D. was initially terminated from this matter on February 5, 2019.

Plaintiff's motion to amend the second amended complaint is **GRANTED**, and Defendants' motions to dismiss the second amended complaint is **ADMINISTRATIVELY TERMINATED**.[2]

## I. BACKGROUND

### A. Factual Background

This action arises out of events which occurred during Plaintiff's detention at MCCI in Freehold, New Jersey. (Third Am. Compl. (ECF No. 67-2).) On or about June 29, 2015, Plaintiff was taken to MCCI following his release from Bayshore Hospital after a car crash.[3] (*Id.* at ¶¶ 21–26.) At MCCI, Petitioner advised medical providers the medication they were providing was insufficient for his pain. (*Id.* at ¶¶ 27–29.) Petitioner experienced involuntarily leg jerking, numbness in his leg, and "feel his hip pop out of place." (*Id.* at ¶¶ 30–33.) Plaintiff experienced issues with his mobility including difficulty using stairs and showering, due to pain. (*Id.* at ¶¶ 35–37.) Plaintiff submits the pain resulted in him developing mental issues resulting in him being given psychiatric drugs. (*Id.* at ¶ 35.) After six months of experiencing the aforementioned pain, an x-ray was taken. (*Id.* at ¶ 38.) Kevin McDonnel, M.D., interpreted the x-ray as a "deformity of the left hip acetabulum. Chronic. Severe degenerative changes." (*Id.* at ¶ 39.) Plaintiff contends, "Hashmi and Unachukwu lied about the x-ray, telling Plaintiff that the pain he was experiencing was just the result of an old fracture that had healed." (*Id.* at ¶ 40.) He also submits, Defendants "Hashmi and/or Unachukwu wrote off Plaintiff's limping as the result of 'mild' pain and refused

---

[2] Notwithstanding the Court's decision to administratively terminate Defendants' motion to dismiss the second amended complaint in light of granting Plaintiff's motion to amend, the Court's ultimate disposition with respect to either the second or third amended complaints would not have been materially different as this Court's screening applies a Rule 12(b)(6) standard.

[3] Prior to the car crash, Petitioner was experiencing hip pain and issues stemming from a hip injury when he was fourteen years old, which was treated by surgically implanting a screw in his hip, and a subsequent fall in 2011, where he began to experience hip pain. (ECF No. 55 ¶¶ 14, 16-17).

2

to pursue any remedial treatments other than medication which he knew were totally ineffective." (*Id.* at ¶ 59.) Plaintiff's requests for follow-up care as well as to be housed in a medical wing which accommodated disabled inmates, was denied. (*Id.* at ¶¶ 41-44.) Moreover, Plaintiff's requests for a wheelchair, cane, or permission to use the bottom bunk were denied. (*Id.* at ¶ 45.) Almost two years later, in April 2017, Plaintiff was transferred to South Woods State Prison. (*Id.* at ¶ 47.) At South Woods, an x-ray was taken after a nurse observed Plaintiff's "attempt to walk." (*Id.* at ¶ 48.) The x-ray reflected Plaintiff's hip was severely deformed, the screw in his hip had come loose, and he needed a complete hip replacement. (*Id.* at ¶ 48.) On December 12, 2017, Plaintiff underwent a total hip replacement at St. Francis Hospital. (*Id.* at 50.)

### B. Procedural Background

Plaintiff filed his initial complaint *pro se* in this Court on April 16, 2018. (ECF No. 1.) On June 26, 2018, the Court issued an order and opinion granting Plaintiff's *in forma pauperis* application and dismissed the complaint without prejudice for failure to state a claim. (ECF No. 2.)[4] Both of Plaintiff's motions for *pro bono* counsel were denied. (ECF Nos. 8, 20.) Plaintiff's subsequent motion to amend was granted. (ECF No. 9.) Plaintiff filed additional motions for leave to amend (ECF Nos. 10, 14, 22), which were subsequently terminated to allow Plaintiff's newly retained counsel an opportunity to file an amended complaint. (ECF No. 29.) On July 23, 2019, Plaintiff filed an amended complaint. (ECF No. 30.) Defendants Wellpath and Hashmi filed a motion to dismiss the amended complaint on July 10, 2019. (ECF No. 48.) On December 29, 2010, Plaintiff, through counsel, filed a second amended complaint, without leave of the Court. (ECF No. 55.) On January 27, 2020, the Court entered an order terminating Defendants' Motion to

---

[4] Plaintiff's initial complaint solely named Kevin McDonnell, M.D. as a defendant.

Dismiss in light of Plaintiff's second amended complaint. (ECF No. 57.) Defendants Wellpath and Hashmi then filed a motion to dismiss the second amended complaint. (ECF No. 59.)[5]

## II. MOTION TO AMEND SECOND AMENDED COMPLAINT

Plaintiff filed a motion to amend the second amended complaint while Defendants' motion to dismiss the second amended complaint was pending. (ECF No. 67.) Plaintiff argues he recently obtained discovery which allowed him to name a defendant previously identified as John Doe, M.D. (*Id.* at ¶¶ 6-7.) Plaintiff submits that, as a result of the discovery he just received close to eight months after Defendants' instant motion to dismiss was filed, he has learned John Doe, M.D. is nurse practitioner, Daniel Unachukwu. (*Id.* at ¶ 6.) Moreover, the proposed third amended complaint changes the Eighth Amendment deliberate indifference claim to a Fourteenth Amendment deliberate indifference claim, as Plaintiff was a pretrial detainee. (*Id.* at ¶ 8.)

A court has discretion to strike or allow an amended complaint that is filed after the deadline to make an amendment as a matter of course under Rule 15(a)(1) has passed. Plaintiff's instant motion to amend was clearly filed after the twenty-one-day amendment "as a matter of course" period had expired and he already amended his pleading once. Therefore, he may only amend the pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

> The court's leave to amend "shall be freely given when justice so requires." *Id.* A general presumption exists in favor of allowing a party to amend its pleadings. *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984). Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 367 (3d Cir. 2013) (citation omitted). "Futility

---

[5] The parties entered a stipulation of dismissal with prejudice as to defendants Scott Miller, M.D., and St. Francis Medical Center. (ECF Nos. 51-54.)

> means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)) (further citation omitted).
>
> "[A] refusal of a motion for leave to amend must be justified," *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995), and the Third Circuit has identified the following as permissible justifications: "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." *Id.* (citing *Foman*, 371 U.S. at 182). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). For that reason, the Court applies the "plausibility" standard which applies to motions to dismiss under Rule 12(b)(6), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Hunter v. Dematic*, Civ. Action No. 16-00872, 2016 WL 2904955 at *3-4 (D.N.J. May 18, 2016).

Plaintiff argues the Defendants would not suffer any prejudice by this amendment because the factual allegations against the previously unnamed defendant have not changed. (*Id.* at ¶ 9.) He further argues, the proposed amendment would not alter Defendants' arguments in their motion to dismiss because if the claims against Hashmi and Wellpath LLC fail, so do the claims against the newly-identified defendant, Unachukwu. (*Id.* at ¶ 10.) Although Plaintiff does not address the additional matter of his recharacterizing his deliberate indifference claim as a Fourteenth Amendment violation, the Court does not view this as being prejudicial to the moving Defendants because the deliberate indifference claim can rightfully be assessed under a Fourteenth Amendment or Eighth Amendment standard. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003).

The Court notes Plaintiff has now filed multiple amendments both as a *pro se* litigant and with representation.[6] In light of Plaintiff's representation, that he recently received discovery which allowed him to clarify John Doe M.D.'s identity, the Court will permit the third amended complaint and order the Clerk to have it filed. Furthermore, the only substantive changes to the proposed amended third complaint are the addition of Unachukwu's name and the replacement of the Eighth Amendment deliberate indifference claim with a Fourteenth Amendment claim. (ECF No. 67-2.) Therefore, Plaintiff's motion to amend is granted. Nevertheless, this Court must still screen the third amended complaint given that Plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B).

## III. LEGAL STANDARD

### A. Screening Standard

Per the Prison Litigation Reform Act, Pub.L. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A because

---

[6] Moving Defendants also ask the Court to deny Plaintiff's second amended complaint, as it was filed without the moving defendants' consent and without leave of court while a previous motion to dismiss was pending. (ECF No. 55 at 18-19.) Although leave was not sought and Plaintiff's counsel's actions were technically improper, the Court would have granted leave under the circumstances. Nevertheless, the Court may not be so forgiving of future delayed filings and amendments.

Plaintiff is a prisoner proceeding *in forma pauperis* and is seeking relief from government employees.

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

That is, a complaint must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679); *see also Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted).

In general, where a complaint subject to statutory screening can be remedied by amendment, a district court should not dismiss the complaint with prejudice, but should permit the amendment. *See Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that leave to amend should be granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"), cited in *Thomaston v. Meyer*, 519 F. App'x 118, 120 n.2 (3d Cir. 2013); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 453 (3d Cir. 1996).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a "probability requirement."" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation' " must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-'that the pleader is entitled to relief.'" *Id.* at 679. (quoting Fed. R. Civ. P. 8(a)(2)). Moreover, the Court will employ its screening authority under the Prison Litigation Reform Act ("PLRA"). "[I]f there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss,

the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA." *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 589 (W.D. Pa. 2008).

### B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Although a county may be a proper defendant in a § 1983 action, a county jail is not. *Hutton v. Dep't of Homeland Sec.*, Civ. A. No. 17-13393, 2018 WL 734666 at *2 (D.N.J. Feb. 5, 2018). Consequently, all of Petitioner's claims against MCCI are dismissed with prejudice.

## IV. DECISION

### A. Deliberate Indifference-Medical Care

In Count One of his third amended complaint, Plaintiff alleges a Fourteenth Amendment deliberate indifference to his medical needs by Defendants Hashmi, McDonnell, Unachukwu, Warden Donald Sutton and John Does A-E. (ECF No. 67-2 at ¶¶ 54-62.) Plaintiff provides very few facts to support his deliberate indifference claim against the defendants.

9

Although a pretrial detainee's medical care claim is to be assessed through the Fourteenth Amendment's due process lens, the Third Circuit has found "no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003) (internal citations omitted). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble,* 429 U.S. 97, 103–105, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. at 104; *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer,* 511 U.S. at 837. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. at 104–05. *See Coudriet v. Vardaro*, 545 F. App'x 99, 104 (3d Cir. 2013) (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001)).

> "Deliberate indifference," therefore, requires "obduracy and wantonness," *Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *See Farmer v. Brennan,* 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). Moreover, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"

*Rouse*, 182 F.3d at 197.

Plaintiff alleges facts that appear to suggest Defendants Hashmi, McDonnell and Unuchokwu downplayed the severity of his condition. Plaintiff provides while he was provided

10

pain medication, the prison staff ignored his complaints that the medication was insufficient. Moreover, he was eventually administered an x-ray, months after his detention at MCCI commenced. The results of the x-ray indicated a potentially serious condition which may have needed further medical attention, however, according to the Plaintiff, his cries for help continued to go ignored. While Plaintiff has not clearly pled whether it was Hashmi or Unachukwu, or both, who read Dr. McDonnell's x-ray report, he does state that he informed Hashmi, McDonnell and Unachukwu that he was in severe pain.

The facts of Plaintiff's case are parallel to that of the state prisoner in *Spruill v. Gillis*, 372 F.3d 218, 224-225 (3d Cir. 2004), where the Plaintiff repeatedly expressed he was in severe pain from a pre-existing back disorder that was exacerbated by two falls in one week at the correctional facility. Spruill alleged he complained to prison officials that the pain medication he was provided was insufficient. The United States Court of Appeals for the Third Circuit held Spruill adequately pled deliberate indifference to survive a motion to dismiss. Here, like *Spruill,* the Plaintiff informed the moving Defendants the pain medication he was provided was not alleviating his hip pain. Plaintiff's condition caused him mental anguish as well as decreased mobility. Contrasting the prisoner in *Spruill* with the Plaintiff here, the medical defendants in *Spruill* accused him of malingering and handled him in a rough manner when they were examining him. *Id.* at 225. While Plaintiff here has not alleged such untoward conduct by the defendants, his condition and the "threat of tangible residual injury" foreclose dismissal of the deliberate indifference claim at this screening stage. *Id.* at 235.

Consequently, Plaintiff has adequately pled a deliberate indifference claim against Defendant Hashmi, McDonnell and Unachokwu. Therefore, Plaintiff's deliberate indifference claim will **PROCEED** against those three defendants.

As for Plaintiff's deliberate indifference claim against Warden Sutton and MCCI Supervisors John Does A-E, Plaintiff states, they were "personally involved in the deliberate indifference to Plaintiff's serious medical condition by denying Plaintiff's requests for treatment and/or ratifying policies and/or decisions that forbid the doctors from attending to Plaintiff's severely painful condition." (ECF No. 67-2 at ¶¶ 61-62.)

This Court analyzes supervisory claims using one of two theories. First, a supervisor can be held liable if they "established and maintained a policy or custom which directly caused the constitutional harm and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). In order to establish a claim in this context, Plaintiff would have to show that the prison official: (1) had knowledge of the prisoner's problem, (2) that the official either failed to act or took any ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference, and that (3) a causal connection exists between the official's response and the harm. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989) (holding that evidence was insufficient to hold Commissioner of Corrections liable for constitutional violations).

Here, Plaintiff appears to be making both a policymaker claim and alternatively that Sutton and John Does A-E had knowledge of the alleged violations. In order to establish supervisory liability in the policymaker context, Plaintiff would have to show: (1) the existence of a policy or practice that created an unreasonable risk of an Eighth Amendment violation; (2) the supervisor's awareness of the creation of the risk; (3) the supervisor's indifference to the risk; and (4) that the plaintiff's injury resulted from this policy or practice. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d

Cir. 1989) (holding that evidence was insufficient to hold Commissioner of Corrections liable for constitutional violations). Moreover, the *Sample* Court articulated that deliberate indifference could be demonstrated by "evidence that the supervisory official failed to respond appropriately in the face of a pattern of such injuries. *Id.*

In this case, the third amended complaint contains insufficient factual matter to suggest that any policy or practice created the harm that Plaintiff alleges as the first *Sample* factor requires. Assuming *arguendo* Plaintiff did demonstrate that a policy or practice that triggered Eighth Amendment protections existed, Plaintiff has not demonstrated that these particular defendants were aware of it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001) (holding that plaintiff did not establish that prison official was aware of "pattern" of violations by prison employees). Plaintiff has not alleged that the defendants were aware of a pattern of behavior that posed a risk to plaintiff. Therefore, the Court cannot proceed to the remaining requisite factors set forth in *Sample*, because of Plaintiff's failure to meet the first two factors.

Plaintiff's claims against the warden and supervisors cannot succeed under his theory that they denied his requests for treatment. *See Ayala v. Terhune*, 195 F. App'x 87, 91 (3rd Cir. 2006) ("[P]rison administrators cannot be found deliberately indifferent under the Eighth Amendment because they fail to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of prison physicians.") (internal citation omitted).

Accordingly, Plaintiff's deliberate indifference claim against Defendants Sutton and John Does A-E is **DISMISSED WITHOUT PREJUDICE**.

### B. Americans with Disabilities Act Claim

In Count Three, Plaintiff alleges a violation by Defendants Hashmi, Unachukwu, John Does A-E, Warden Sutton, MCCI, Monmouth County and the state of New Jersey[7] of the Americans with Disabilities Act ("ADA"). (ECF No. 67-2 at ¶¶ 66-74.) Plaintiff alleges several of the defendants were "directly responsible for denying [him] reasonable accommodations." (*Id.* at ¶¶ 69-71.)

In order to state a claim for relief under the ADA, a plaintiff must plead facts which would show that he is a qualified individual with a disability, that he was denied the benefits of a program or activity of a public entity, and that the exclusion from those benefits occurred by reason of his disability. *See, e.g., Calloway v. Boro of Glassboro Dep't of Pol.*, 89 F. Supp. 2d 543, 551 (D.N.J. 2000); *see also Ali v. Governor of Del.*, 777 F. App'x 584, 588-89 (3d Cir. 2019).

Plaintiff does not provide any additional facts as to how these individuals or entities were responsible. Nor has he identified the nature of his disability, if any.

Consequently, Plaintiff's ADA claim against Defendants Hashmi, Unachukwu, John Does A-E, Warden Sutton, Monmouth County, and the state of New Jersey is **DISMISSED**.

### C. Plaintiff's State Law Claims

Plaintiff also alleges violations under New Jersey's Law Against Discrimination and medical malpractice laws.

---

[7] Plaintiff does not list New Jersey as a party in this matter in the section of the complaint where he lists all of the defendants, nevertheless, he raises an ADA claim against the state as well. (ECF No. 67-2 at ¶ 74.)

1. **Medical Malpractice**

Plaintiff alleges medical malpractice by Defendants Hashmi, McDonnell and Unachokwu, as well as Wellpath LLC under the doctrine of *respondeat superior*. (Am. Compl. (ECF No. 67-2) at ¶ 187.)

Under New Jersey law, the plaintiff raising a medical malpractice claim has the burden of proving the relevant standard of care governing the defendant-doctor, a deviation from that standard, an injury proximately caused by the deviation, and damages suffered from the defendant-doctor's negligence. *Komlodi v. Picciano*, 89 A.3d 1234, 1246 (N.J. 2014). Moreover, under New Jersey law, "[w]here the physician is a direct employee, respondeat superior may be applied." *Dunn v. Praiss*, 606 A.2d 862, 869 (N.J. Super. Ct. App. Div., 1992).

In light of Plaintiff's allegations against the medical personnel defendants, the Court will allow the medical malpractice claim to proceed against Hashmi, McDonnell and Unachokwu. Moreover, because Defendant Hashmi was employed by Wellpath during the relevant time period, the Court will allow Plaintiff's respondent superior theory at this stage. Therefore, Plaintiff's medical malpractice claim against Hashmi, McDonnell, Unachokwu and Wellpath, LLC will **PROCEED**.

2. **New Jersey Law Against Discrimination**

Finally, Plaintiff raises a claim under the NJLAD, codified at N.J. Stat. Ann. §§ 10:5-1-49. (ECF No. 67-2 at ¶¶ 75-82.) Plaintiff alleges Defendants Hashmi, Unachukwu, John Does A-E, Warden Sutton and Monmouth County directly or vicariously violated his right under NJLAD by denying his requests for reasonable accommodations. (*Id.*)

"To eliminate workplace discrimination against those with disabilities, [b]oth the [NJ]LAD and ADA were enacted to protect the rights of those with disabilities, and to enable them to

vindicate those rights in court." *Caraballo v. City of Jersey City Police Dep't.*, 204 A.3d 254, 260 (N.J. 2019) (internal quotation marks and citation omitted). Consequently, a plaintiff pleading a NJLAD disability claim must first, show he is in a protected class, meaning he qualifies as an individual with a disability. Second, the plaintiff must show he is "qualified to perform the essential functions of the job, or was performing those essential functions either with or without a reasonable accommodation." *Victor v. State*, 4 A.3d 126, 142 (2010).

Here, however Plaintiff pleads nothing more than that the defendants denied him reasonable accommodations. He does not articulate whether this purported discrimination was in the context of employment, which is a central issue to whether he can raise a disability-related NJLAD claim. Consequently, Plaintiff has not alleged enough factual content to adequately plead a NJLAD violation. Plaintiff's NJLAD claim against Defendants Hashmi, Unachukwu, John Does A-E, Warden Sutton and Monmouth County is **DISMISSED WITHOUT PREJUDICE**.

**V. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Amend the Second Amended Complaint. (ECF No. 67) is **GRANTED**; Defendants' Motion to Dismiss the Second Amended Complaint, (ECF No. 57), is **ADMINISTRATIVELY TERMINATED**; and Plaintiff's Third Amended Complaint (ECF No. 67-2) will **PROCEED IN PART** and is **DISMISSED IN PART**. An appropriate order follows.

Dated: September 29, 2020

>*/s/ Brian R. Martinotti*
>**HON. BRIAN R. MARTINOTTI**
>**UNITED STATES DISTRICT JUDGE**