UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DONELL FREEMAN**,<br><br>Plaintiff,<br><br>v.<br><br>**KEVIN MCDONNELL, M.D., et al**.,<br><br>Defendants. | Civil Action No. 18-7802 (BRM)(ZNQ)<br><br>**MEMORANDUM OPINION** |

This matter comes before the Court upon Plaintiff Donell Freeman's ("Plaintiff") Motion for Leave to file a Fourth Amended Complaint (the "Motion."). (Mot. For Leave to file Amended Compl., ECF No. 82). Defendants Wellpath, LLC f/k/a Correct Care Solutions, Kabeeruddin S. Hashmi, M.D., and Daniel A. Unachukwu (collectively as, "Defendants") opposed, (Defs.' Opp'n, ECF No. 85), and Plaintiff replied, (Pl.'s Reply, ECF No. 89). Defendants Monmouth County, Monmouth County Correctional Institution ("MCCI"), and Warden Donald Sutton filed separate opposition, (MCCI Opp'n, ECF No. 92), and Plaintiff replied, (Pl.'s Second Reply, ECF No. 93). The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion is granted in part and denied in part.

I.  **BACKGROUND**

Plaintiff seeks leave to file a Fourth Amended Complaint. This action stems from events that occurred during Plaintiff's detention at Monmouth County Correctional Institution ("MCCI"), a county jail located in Freehold, New Jersey. (Fourth Amended Compl. at ¶¶ 4-5, ECF No. 82-2.)

Plaintiff alleges, among other things, that his severe hip injury was mistreated for years at MCCI. (*See generally,* Fourth Amended Compl.) Plaintiff alleges deliberate indifference to a serious medical condition under 42 U.S.C. §1983, medical malpractice, violation of the Americans with Disabilities Act under 42 U.S.C. §12101, violation of the New Jersey Law Against Discrimination pursuant to N.J.S.A. 10:5-12, and violation of Section 504 of the Rehabilitation Act. (*See generally*, *id*.)

Plaintiff filed his first complaint *pro se* on April 16, 2018. (ECF No. 1). The Court dismissed the complaint without prejudice for failure to state a claim. (ECF No. 2.) Plaintiff filed a motion to amend, which the Court granted. (ECF No. 9.) Plaintiff subsequently sought to amend the complaint three times, but the Court terminated those motions to allow Plaintiff's newly retained counsel an opportunity to file an amended complaint. (ECF Nos. 10, 14, 22, 29).  Plaintiff then filed an amended complaint on July 23, 2019. (ECF No. 30.) On December 29, 2019, Plaintiff filed a second amended complaint without leave of the Court. (ECF No. 55). The Court terminated the Motion to Dismiss that was filed by Defendants Wellpath and Hashmi on July 10, 2019, due to Plaintiff filing a second amended complaint. (ECF No. 57.) Defendants Wellpath and Hashmi then filed a motion to dismiss the second amended complaint. (ECF No. 59.) Plaintiff sought to amend the second amended complaint. (ECF No. 67.) The Court granted the motion to amend the second amended complaint in part and denied it in part. (ECF No. 72.) Plaintiff filed a third amended complaint on September 29, 2020 (ECF No. 74.) Plaintiff now seeks leave to amend the third amended complaint and file a fourth amended complaint. (ECF No. 82.)

## II.     LEGAL STANDARD

### a. Amendment of Pleadings

Rule 15(a)(2) authorizes a party to amend its pleadings "only with the opposing party's written consent or the court's leave." Rule 15(a)(2) further instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Though within the discretion of the Court,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Great Western Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (citing *In re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007). "The standard for assessing futility is the 'same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6),'" meaning that all pleaded allegations are taken as true and viewed in a light most favorable to plaintiff. *Id.* (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007). "[D]elay alone does not justify denying a motion to amend." *Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, No. 14-4265, 2017 WL 772905, at *4 (D.N.J. Feb. 27, 2017). "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Phillips v. Borough of Keyport*, 179 F.R.D. 140, 144 (D.N.J. 1998) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.1978)) (alteration in original). The Third Circuit has contemplated that the standard for denial of amendment is high, stating "[g]enerally,

3

Rule 15 motions should be granted." *United States ex rel. Customs Fraud Investigations, LLC. V. Victaulic Co.*, 839 F. 3d 242, 249 (3d Cir. 2016).

### b. Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101

To establish a claim under Title II of the ADA, a plaintiff "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Tro*xell, 885 F.3d 171, 178 (3d Cir. 2018) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). The Act defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C.S. § 1210 (1)(A). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking," and more. 42 U.S.C.S. § 1210 (2)(A). The purpose of the ADA is "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities." See *Harris v. Lanigan*, No. CIV.A. 11-1321 MLC, 2012 WL 983749, at *5 (D.N.J. Mar. 22, 2012) (citing 42 U.S.C. § 12101(b)(1)). The ADA "prohibits discrimination against individuals with disabilities in the areas of employment (Title I); public services, programs and activities (Title II); and public accommodations (Title III)." *Id*.

### c. New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5–4

The New Jersey Law Against Discrimination ("NJ LAD") provides that "[a]ll persons shall have the opportunity... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation...without discrimination because of... disability." N.J. Stat. Ann. § 10:5–4. Although there are currently no state court decisions addressing whether correctional facilities are places of public accommodation, New Jersey district courts have

repeatedly found that correctional facilities are places of public accommodation under the NJ LAD. *See, e.g., Chisolm v. McManimon*, 97 F. Supp. 2d 615, 621–22 (D.N.J. 2000), rev'd and remanded on other grounds, 275 F.3d 315 (3d Cir. 2001) (holding that it is very likely that the New Jersey Supreme Court would find that jails and prisons are places of public accommodation); *Delbridge v. Whitaker*, No. 2:09–4227, 2010 WL 1904456, at *6 (D.N.J. May 10, 2010) (citing *Albrecht v. Williams*, No. 04–1895, 2009 WL 3296649, at *18 (D.N.J. Oct. 13, 2009) ("[u]nder the provisions of the LAD, prisons qualify as places of accommodation"). To establish a claim under the NJ LAD, a plaintiff must show that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse action because of that disability." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 502–03 (D.N.J. 2008).

### d. Deliberate Indifference to a Serious Medical Condition, 42 U.S.C. § 1983

For a plaintiff "[t]o state a [§1983] claim against a private corporation providing medical services under contract with a state prison system, [he] must allege a policy or custom that resulted in the alleged constitutional violations at issue." *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003)). A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale*, 318 F.3d at 584 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Id*. (citing *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

5

### III. DISCUSSION

The Court now considers the relevant factors to determine whether leave to amend should be granted.

#### a. Undue Delay

Defendants argue that by seeking leave to amend his complaint a fourth time, Plaintiff is causing undue delay. (Defs.' Opp'n at 3-5.) Defendants allege that "the new claims Plaintiff seeks to include in the proposed Fourth Amended Complaint were in the knowledge and possession of Plaintiff in September 2020 and Plaintiff made the conscious decision not to include them in the Third Amended Complaint." (*Id.* at 4.) Defendants further allege that "[allowing] this amendment would further delay this litigation as Defendants will again be forced to ask the Court to complete a Rule 12(b)(6) analysis of the claims." (*Id.* at 5.) Defendants also contend that "the significant undue delays" in this litigation are the result of Plaintiff's conduct only. (*Id.*)

In his Reply, Plaintiff alleges that the delay in this case is the result of Defendant Wellpath's actions. (Pl.'s Reply at 1.) Plaintiff argues that all of his amendments "were timely and appropriate." (*Id.* at 3.) Plaintiff alleges that the first amendment was "filed due to a July 2, 2019 court order that ordered [Plaintiff's] newly retained counsel to file an amended complaint. (*Id.*) Plaintiff alleges that the second amendment, which was filed on December 29, 2020, was filed as "a simple, well-meaning housecleaning effort to remove" two former Defendants, "after discovery proved that neither were liable." (*Id.* at 4.) Plaintiff further contends that the "third amendment would have been filed earlier than September 2020 if Wellpath had complied with the Court's discovery order to provide answers to Plaintiff's interrogatories by March 1, 2020." (*Id.* at 5.) Plaintiff alleges that he did not receive Plaintiff's interrogatories until August 25, 2020, and upon receiving the interrogatory responses, Plaintiff filed the motion to

amend on September 3, 2020 to name the John Doe Defendant, Daniel Unachukwu. (*Id*.) In the instant motion Plaintiff seeks to add Defendant Wellpath to the deliberate indifference claim because relevant information became known in September 2020, after Plaintiff filed the Third Amended Complaint. (*Id*. at 5-6.) After informing the Court of the relevant information Plaintiff's counsel obtained, the Court granted Plaintiff until November 16, 2020 to file an amendment that included the recently obtained information. (*Id*. at 6; ECF No. 81.)

Delay alone, without more, is typically not enough to justify denying a motion to amend. *Adams v. Gould, Inc*., 739 F.2d 858, 868 (3d Cir. 1984). In determining undue delay, courts must "focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier." (*Id.*)

Although the Court acknowledges that allowing Plaintiff to file a Fourth Amended Complaint would delay the instant matter, the delay does not rise to the level of undue delay that warrants denial of an amendment. Plaintiff has explained to the Court that he seeks to amend the complaint to include information that he did not receive until after the filing of the third amendment. Plaintiff also seeks to cure deficiencies the Court found in Plaintiff's previous complaint. Notably, Defendants' acts contributed to delaying this litigation, as Defendants did not comply with the Court's deadline for responses to Plaintiff's interrogatories. Accordingly, the Court does not find that the Fourth Amended Complaint amounts to undue delay and therefore, this factor weighs in favor of granting leave to amend the complaint.

### b. Bad Faith and Dilatory Motive

Defendants allege that "Plaintiff's amendment is brought in bad faith and with dilatory motive." (Defs.' Opp'n at 5.) Defendants contend that "[t]he instant motion is a delayed, bad faith attempt to re-litigate issues already adjudicated by this Court over the last number of years." (*Id*. at 6.)

The Court disagrees with Defendants. The Court does not find that Plaintiff is amending the complaint in bad faith. As discussed above, Plaintiff seeks to amend the complaint to incorporate information that Plaintiff obtained after filing the Third Amended Complaint. Plaintiff also seeks to cure the deficiencies that the Court noted in its September 29, 2020 Opinion. Therefore, the Court finds that there is no bad faith or dilatory motive by Plaintiff as he has provided legitimate reasons for seeking leave to file the Fourth Amended Complaint. This factor also weighs in favor of granting leave to amend.

### c. Futility

Next, the Court addresses whether Plaintiff's Fourth Amended Complaint would be futile. In determining whether a proposed amendment is futile, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). An amended complaint is futile if, as amended, it "would fail to state a claim upon which relief could be granted." *Id.* The Court "determines futility by taking all pleaded allegations as true and viewing them in the light most favorable to [the moving party]." *Great W. Mining & Mineral Co.*, 615 F.3d at 175. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Defendants allege that the Fourth Amended Complaint is futile as the proposed amendments fail to cure the deficiencies identified by the Court in its September 29, 2020 Opinion. (Defs.' Opp'n at 6.) Specifically, Defendants argue that the proposed amended complaint fails to set forth valid causes of action against Defendants for violations of the ADA and the NJ LAD. (*Id.* at 7-11.) Defendants also argue that Plaintiff failed to properly allege a claim for deliberate

8

indifference against Defendant Wellpath, and that any such claim is barred by the statute of limitations. (*Id*. at 11-14.)

### i. Americans with Disabilities Act

Defendants contend that the Fourth Amended Complaint is futile because Plaintiff does not set forth a valid cause of action under the ADA against Defendants. (*Id*. at 7.) Defendants argue that Plaintiff has not "set forth facts demonstrating that he has a qualifying disability and that 'he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity.'" (*Id*. citing *Haberle v. Troxell*, 885 F.3d 171, 178 (2018).) Defendants further argue that "although there may be a claim for a violation of the ADA against prison officials who are considered part of the public entity, the same cannot be said for entities that simply contract with the facility, such as Wellpath, Dr. Hashmi, and Daniel Unachukwu." (*Id.* at 8.) MCCI, the County of Monmouth, and Warden Donald Sutton also argue that Plaintiff fails to allege that he "has a disability that would entitle him to relief under the ADA" and that Plaintiff fails to "assert a theory under which such counts may be pursued against Warden Donald Sutton, the County of Monmouth and John Does A-E." (MCCI Opp'n at 2-3.)

Plaintiff argues that the Fourth Amended Complaint cures the defects noted in the Court's September 29, 2020 Opinion. (Pl.'s Reply at 7.) Plaintiff argues that his disability is his severe degenerative hip disease, which interferes with major life activities. (*Id*.; Fourth Amended Compl. at ¶ 256). Plaintiff also alleges that "[t]he public programs and services of a jail involve virtually every aspect of jail life" including "his schooling, church attendance, and use of the dining hall and shower." (Pl.'s Reply at 9; *see also* Fourth Amended Complaint at ¶¶ 147-151; 265-268). In response to Defendants' argument regarding Defendants Wellpath, Dr. Hashmi, and Daniel

9

Unachukwu, Plaintiff argues that whether Wellpath and its employees are liable under the ADA "is an unsettled matter of law," and there is no harm in postponing adjudication on the merits until summary judgment. (Pl.'s Reply at 10.) Plaintiff further argues that "Monmouth County is a public entity responsible for the conditions inside the [MCCI]" and therefore can be held accountable under the ADA. (Pl.'s Second Reply at 1-2.)

To establish a claim under Title II of the ADA, Plaintiff must show: 1) he is a qualified individual, 2) with a disability, 3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity, 4) by reason of his disability. *Haberle*, 885 F.3d at 178. As a preliminary matter, the Court determines whether Defendants Wellpath, Dr. Hashmi, and Unachukwu are public entities under the ADA. The ADA defines a public entity as "(a) any State or local government; (b) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (c) the National Railroad Passenger Corporation, and any other commuter authority." 42 USCS § 12131. The Third Circuit has held that "in the context of [the ADA], a private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews v. Pa. Dep't of Corr.*, 613 Fed. Appx. 163, 170 (3d Cir. 2015). Defendant Wellpath is a private entity that employs Dr. Hashmi, and Unachukwu. Accordingly, the Court finds that Plaintiff's ADA claims against Defendants Wellpath, Dr. Hashmi, and Unachukwu in the Fourth Amended Complaint are improper and therefore, futile.

The Court finds that the ADA claim is not futile with respect to Monmouth County and MCCI. Plaintiff adequately alleges that he is disabled because of his "severe degenerative hip disease," which "interfered with his major life activities including walking, bending, sleeping, climbing and using the toilet." (Fourth Amended Compl. at ¶ 256.) Plaintiff also alleges that he

10

was excluded from participation in or denied the services, programs, or activities of a public entity and that Defendants failed to provide Plaintiff with accommodations for his disability. (*Id*. at ¶¶ 254- 269, 281.) Additionally, Monmouth County and MCCI are public entities as defined by the ADA. (*See* 28 C.F.R.§ 35.152 (Title II of the ADA applies to "jails, detention and correctional facilities" run by state and local governments.) Accordingly, the Court does not find that Plaintiff's ADA claims in the Fourth Amended Complaint are futile with respect to Monmouth County and MCCI.

Turning to Warden Donald Sutton and John Does A-E, the Court finds that Plaintiff's ADA claims are futile. In the Fourth Amended Complaint, Plaintiff alleges that Warden Sutton and John Does A-E were "directly responsible for denying Plaintiff reasonable accommodations and/or created policies which denied Plaintiff reasonable accommodations." (Fourth Amended Compl. at ¶¶ 272-273.) Notably, in agreement with the Second and Eighth Circuits, the Third Circuit has held that "Title II of the ADA does not provide for suits against state officers in their individual capacities." *Matthews*, 613 Fed. Appx. at 170. Accordingly, the Court finds that Plaintiff's ADA claims against Warden Sutton and John Does A-E are futile.

Therefore, the ADA claims in Fourth Amended Complaint can proceed against Defendants Monmouth County and MCCI, as those claims are not futile.

### ii. New Jersey Law Against Discrimination

Defendants allege that the Fourth Amended Complaint is also futile because it does not set forth a valid cause of action against Defendants for a violation of the NJ LAD. (Defs.' Opp'n at 10.) Defendants argue that "the matters concerning [Defendants] do not involve employment, housing, places of public accommodation, credit or business contracts." (*Id*.) Defendants also argue that they "did not control Plaintiff's accommodations." (*Id*. at 11.)

11

Plaintiff argues that "the LAD, unlike the ADA, will hold Defendants liable for denial of equal access to public accommodations even if they aren't public entities." (Pl.'s Opp'n at 12.) Plaintiff also argues that although New Jersey state courts have not yet determined the applicability of the LAD to prisons, New Jersey district courts apply it by holding that correctional facilities are places of public accommodation. (*Id*. at 12.)

The NJ LAD provides that "[a]ll persons shall have the opportunity... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation...without discrimination because of... disability." N.J. Stat. Ann. § 10:5–4. To bring a claim under the NJ LAD, a plaintiff must show that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse action because of that disability." *D.G.*, 559 F. Supp. 2d at 502–03. New Jersey district courts have repeatedly found that correctional facilities are places of public accommodation under the NJ LAD. *See, e.g., Chisolm v. McManimon*, 97 F. Supp. 2d 615, 621–22 (D.N.J. 2000), rev'd and remanded on other grounds, 275 F.3d 315 (3d Cir. 2001) (finding that it is very likely that the New Jersey Supreme Court would find that jails and prisons are places of public accommodation).

The Court finds that Plaintiff adequately alleges NJ LAD claims against Defendants in the Fourth Amended Complaint. Despite its similar nature to the ADA, the NJ LAD does not require that claims be brought against public entities. Plaintiff sufficiently alleges that he has a disability and is a qualified individual. (*See* Fourth Amended Compl. at ¶¶ 287-288.) Plaintiff also alleges that he suffered adverse actions by Defendants because of his disability. (*See id*. at ¶¶ 297-300.) Accordingly, Plaintiff's NJ LAD claims are not futile.

### iii. Deliberate Indifference to a Serious Medical Condition

Defendants argue that Plaintiff's deliberate indifference claim against Wellpath is futile because: (1) the claim is barred by the statute of limitations, and (2) Plaintiff fails to state a claim for which relief can be granted. (Defs.' Opp'n at 11-12.) Defendants argue that the statute of limitations for a claim of deliberate indifference by Wellpath expired in April 2019 (*Id*. at 11.) Defendants also argue that Plaintiff has not plead sufficient facts to establish that there were specific customs or policies by Wellpath that violated Plaintiff's constitutional rights. (*Id*. at 14-15.)

Plaintiff responds that his deliberate indifference claim is not barred by the two-year statute of limitations because the claim relates back to the original complaint. (Pl.'s Reply at 7.) Plaintiff also argues that the Fourth Amended Complaint includes policies or customs maintained by Monmouth County and Wellpath that deprived him of his constitutional rights. (*Id*. at 13-14.)

Rule 15(c) provides that "an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c). Accordingly, because Plaintiff's claim against Wellpath arises out of the conduct, transaction, and occurrences set out in the original complaint, Plaintiff's deliberate indifference claim is not barred by the statute of limitations.

Next, the Court considers whether the Fourth Amended Complaint adequately pleads a deliberate indifference claim against Wellpath. "To state a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017). The Court finds that Plaintiff adequately alleges policies and

13

customs maintained by Wellpath that resulted in violation of Plaintiff's constitutional rights. (*See* Fourth Amended Compl. at ¶¶ 223-24, 229-35.) At this stage, Plaintiff's deliberate indifference claim against Wellpath is sufficient to proceed and therefore, the claim is not futile.

### d. Undue Prejudice

Defendants argue that the Fourth Amended Complaint would unduly prejudice Defendants. (Defs.' Opp'n at 15.) Defendants contend that they "will be forced to file yet another Motion to Dismiss" which would lead to additional costs and delays in the litigation. (*Id*. at 16.)

Plaintiff argues that "Defendants ... have not articulated any substantial prejudice other than the passage of time." (Pl.'s Reply at 3.) Plaintiff further argues that "the passage of time is equally detrimental to Plaintiff" and that "Defendants cannot articulate what they would have done differently if this amendment had been made earlier, or any additional expense that they will have to incur due to this amendment." (*Id*.)

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Phillips*, 179 F.R.D. at 144. In examining prejudice, courts focus on whether the amendment would cause hardship to the defendants. *Adams*, 739 F.2d at 868. Courts also consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. National Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001).

The Court does not find that the Fourth Amended Complaint would unduly prejudice Defendants. Defendants have contributed to the delay of this litigation by failing to comply with the Court's discovery deadlines. Moreover, the Fourth Amended Complaint is not alleging different facts or theories as Plaintiff seeks to cure the deficiencies noted in the Court's September 29, 2020 Order. Plaintiff alleges that he is adding a deliberate indifference claim against Wellpath

because "Wellpath's participation in a policy, practice, or custom became known on September 8, 2020 and full details were not known until September 29, 2020." (Pl.'s Reply at 6.) Additionally, discovery in this matter is ongoing. Defendants do not adequately explain how the Fourth Amended Complaint would lead to additional costs not already anticipated when engaging in litigation. Accordingly, the Court does not find that Defendants would be prejudiced by granting Plaintiff's Fourth Amended Complaint in part.

## IV. CONCLUSION

For the reasons stated above, and other good cause shown, Plaintiff's Motion for Leave to Amend his Complaint is hereby granted in part and denied in part. An appropriate Order follows.

s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**
**United States Magistrate Judge**